**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JAMES TAFOYA and
TIMOTHY WOOD,

     *Petitioners*,

v.                                                                          No. 1:22-CV-00517

UNITED STATES OF AMERICA,

     *Respondent*.

**PETITION FOR THE RETURN OF SEIZED PROPERTY
UNDER FED. R. CRIM. P. 41(g)**

Petitioner, James Tafoya, by and through his attorneys, Marc M. Lowry, Carey C. Bhalla, and Wouter Zwart of Rothstein Donatelli, LLP, and Petitioner, Timothy Wood, by and through his attorneys, Nicholas T. Hart and Carter B. Harrison IV of Harrison, Hart & Davis, LLC, petition the Court under Fed. R. Crim. P. 41(g) for the return of property that was unlawfully seized by federal agents at Mr. Tafoya's home and Petitioners' businesses. In support of this petition, Petitioners would respectfully show the Court as follows:

**INTRODUCTION**

Mr. Tafoya and Mr. Wood are federally licensed firearms dealers, and, before Mr. Tafoya's home and Petitioners' businesses were searched by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), they had worked closely with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to ensure that they were in compliance with all the relevant statutes and regulations governing firearms. Since obtaining their federal firearms licenses, ATF has officially approved the acquisition or transfer of each of National Firearms Act ("NFA") firearms at issue in

this motion, and all of Mr. Tafoya's and Mr. Wood's NFA firearms are properly registered with ATF.

On November 30, 2021, however, ATF agents unlawfully seized hundreds of his NFA firearms as well as other items that Mr. Tafoya and Mr. Wood lawfully own. To date, the United States has not charged Mr. Tafoya or Mr. Wood with any crime. Nor has the United States attempted to forfeit these weapons to the United States. *See*, *e.g.*, 18 U.S.C. 983(a)(3)(A). Accordingly, Mr. Tafoya and Mr. Wood petition[1] the Court for the return of their property under Rule 41(g) of the Federal Rules of Criminal Procedure, which provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).

## FACTUAL BACKGROUND

1.    James Tafoya is a successful licensed firearms dealer in Albuquerque, New Mexico.

2.    Since October 2009, Mr. Tafoya has operated JCT Firearms located in Albuquerque, New Mexico. Mr. Tafoya's secure warehouse for JCT Firearms is located nearby.

3.    Since October 2009, Mr. Tafoya has held several Federal Firearms Licenses ("FFLs") and Special Occupational Tax ("SOT") certificates, which, depending on the type of

---

[1] Although Rule 41(g) of the Federal Rules of Criminal Procedure is entitled "Motion to Return Property," the Ninth Circuit has acknowledged that "[t]hough styled as a motion under a Federal Rule of Criminal Procedure, when the motion is made by a party against whom no criminal charges have been brought, such a motion is in fact a petition that the district court invoke its civil equitable jurisdiction." *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (en banc) (per curiam), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam). *See Clymore v. United States*, 164 F.3d 569, 571 (10th Cir. 1999) ("Rule 41(e) can be used as a vehicle to *petition* for the return of property seized by state authorities.") (emphasis added). As stated above, despite the fact that seven months have passed since Mr. Tafoya's home and Petitioners' businesses were searched, no criminal charges have been brought against Petitioners.

license, allows a person to import, manufacture or deal in firearms, including machine guns, short-barreled shotguns or rifles ("SBSs" and "SBRs"), and silencers under the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, and the National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq*. These types of firearms are generally referred to as NFA firearms.

4.      Timothy Wood operates Woody's Weapons, which is a FFL that also engages in the sale of NFA firearms.

5.      Woody's Weapons is a joint venture between Mr. Tafoya and Mr. Wood, and is one of the FFLs that acquired many of the NFA firearms at issue in this motion.

**A.      *Background on acquiring and transferring NFA firearms.***

6.       A person cannot possess a NFA firearm manufactured or imported on or after May 19, 1986—commonly known as a "post-sample" or a "post-1986" [2] firearm—without the appropriate FFL and SOT. *See* 18 U.S.C. § 922(o). With the appropriate FFL, a person can sell or transfer standard firearms under the Gun Control Act of 1968; however, for a person import, manufacture, or transfer a post-1986 firearm such as a fully automatic machine gun or silencer, the license holder also needs a SOT certificate. There are three types of SOT certificates: (i) a Class 1 SOT allows a person to import NFA firearms; (ii) a Class 2 SOT allows a person to manufacture NFA firearms; and (iii) a Class 3 SOT allows a person to deal, *i.e.*, sell, NFA firearms. The ATF, which oversees both the GCA and NFA, commonly refers to FFL license and SOT certificate holders as an "FFL/SOT" or as "FFLs/SOTs."

---

[2] In 1986 Congress banned the transfer and possession of machine guns not already in lawful circulation. *See* 18 U.S.C. § 922(b)(4), (o). Machine guns that were lawfully owned before the ban's effective date (pre-ban machine guns) may continue to be owned and transferred provided they are registered in accordance with the NFA. Nobody can manufacture, make, import, or transfer firearms made after the ban—post-sample or post-1986 machine guns—without ATF's express approval. 26 U.S.C. §5841(a), (c). *See also* 27 C.F.R. §§ 479.101, 479.105. The NFA requires each importer, manufacturer, or dealer in firearms covered by the NFA to register annually with the ATF. *See* 26 U.S.C. § 5802.

7.      Due to the 1986 firearm ban, an FFL/SOT, such as Mr. Tafoya and Mr. Wood, can only acquire a post-1986 firearm by either: (i) making a dealer-to-dealer exchange by buying a post-1986 firearm from another FFL/SOT; or (ii) by obtaining what is called a "law letter" or "Demo Letter" from certain types of governmental customers, such as a local law enforcement agency, that expresses an interest in acquiring a particular model of machine gun or has an interest in seeing a demonstration of a particular machine gun. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5852(d); 27 CFR § 479.105(c).

8.      ATF approval is required for both methods.

9.      A law letter or Demo Letter is an official letter from a law enforcement agency documenting its interest in a certain type of machine gun for purchase or demonstration. *See* 27 CFR § 479.105. A Demo Letter is valid for one year. NFA firearms that are lawfully imported by an FFL/SOT to demonstrate to government agencies and to generate possible future sales to such agencies are called "sales samples" firearms under 27 CFR § 479.105(c) & (d). *See also* 27 C.F.R. § 479.112(c), (d).

10.     Typically, once an FFL/SOT has acquired a Demo Letter from a law enforcement agency, an FFL/SOT (as Petitioners are) will contact an importer and inform the importer that he needs a certain make and model of an NFA firearm for a government entity and that he has the required Demo Letter. If the importer does not have the specific model in its current inventory, the importer will contact ATF's import branch and apply to import the NFA firearm using an ATF Form 2. Post-1986 firearms that are manufactured abroad and then imported through a Demo

4

Letter are typically stored in a Customs Bonded Warehouse ("CBW")[3] or kept within a Foreign Trade Zone ("FTZ")[4] before the ATF authorizes the Form 2 transfer to a licensed FFL/SOT importer.

11.    Many post-1986 firearms, including nearly all the machine guns Mr. Tafoya acquired from 2013 through the present, and many firearms acquired by Woody's Weapons, are manufactured in the United States, and do not need to be imported from another country. Although these post-1986 firearms are not imported from another country, an FFL/SOT like Mr. Tafoya or Mr. Wood still needs ATF's approval before having a post-1986 firearm transferred to an ATF-approved location.

12.    In 2006 ATF released the following guidance explaining the law letter requirement:

> Title 27, Code of Federal Regulations, § 479.105 requires that applications to transfer and register "post-1986" machine guns will be approved if it is established by specific information the expected governmental customers who would require a demonstration of the firearm, information as to the availability of the machine gun to fill subsequent orders, and letters from governmental entities expressing a need for a particular model or interest in seeing a demonstration of a particular machine gun. The regulation further requires that applications to transfer more than one machine gun must also establish the dealer's need for the quantity of samples sought to be transferred.

> Thus, an application to transfer a "post-1986" machine gun to a Federal firearms licensee and special (occupational) taxpayer must be submitted with a "law letter" evidencing a government agency's interest in a particular machine gun.

---

[3]  ATF explains that a "Customs Bonded Warehouse is a building or other secured area in which dutiable goods may be stored without payment of duty. Bringing items into a CBW is an importation. To bring NFA firearms into a CBW for storage requires an approved ATF Form 6. . . . To withdraw stored NFA firearms stored from a CBW, an additional Form 6 is required." *National Firearms Act Handbook §* *8.3.12.1*, Bureau of Alcohol, Tabaco, Firearms and Explosives (Revised April 2009), available at https://www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook-atf-p-53208/download ("NFA Handbook").

[4]  ATF explains that a "Foreign Trade Zone is a specially designated area, in or adjacent to a U.S. Customs Port of Entry, which is considered to be outside the Customs Territory of the United States. For the purposes of the GCA and NFA, bringing items into an FTZ is not treated as an import because the FTZ is considered foreign soil." NFA Handbook § 8.3.12.2.

The NFA Branch will look for the following information in the letter:

- written on agency letterhead and signed by the agency head or by someone with delegated authority to sign for the agency head

- dated within one year of the date of the receipt of the application

- identification of the particular machine gun being transferred (for example, M16A2)

- identification of the agency's interest in the machine gun (for example, purchase, or demonstration)

- documentation of the need for more than one machine gun of a particular model.

*NFA "Law Letter" Requirement*, Bureau of Alcohol, Tabaco, Firearms and Explosives (rev. Feb. 23, 2006), *available at* https://www.atf.gov/firearms/docs/nfa-law-letter-requirement/download. *See* 26 U.S.C. § 5812; 27 C.F.R. § 479.112 (listing requirements under ATF Form 6 for importing machine guns).

13.    To assist FFLs/SOTs like Mr. Tafoya and Mr. Wood, ATF has published a comprehensive guide to its regulations. *See National Firearms Act Handbook*, Bureau of Alcohol, Tabaco, Firearms and Explosives (Revised April 2009), available at https://www.atf.gov/firearms/docs/guide/atf-national-firearms-act-handbook-atf-p-53208/download ("NFA Handbook"). As part of that handbook, ATF provides example Demo Letters that FFLs/SOTs can use when working with government entities. *See* NFA Handbook, Appendix D, at 206.

**B.    *Mr. Tafoya's Demo Letters 2013-2018.***

14.    Beginning around late 2013 or early 2014, Mr. Tafoya began working with local government entities to conduct weapon demonstrations with different types of NFA firearms for law enforcement officers to gain experience and learn how to handle particular weapons safely, and to learn individual firearm functionality. In his dealings with various police department and

6

agencies in New Mexico, Mr. Tafoya modeled his Demo Letters on ATF's sample Demo Letter contained in the NFA Handbook. At the time, Mr. Tafoya had a Type 1 FFL, and could deal in firearms other than destructive devices.

15.     Based on his work with law enforcement agencies, local law enforcement agencies have agencies have acquired or expressed an interest in acquiring ATF-regulated weapons from Mr. Tafoya's businesses.

16.     Before October of 2019, Mr. Wood would occasionally assist Mr. Tafoya in carrying out some of the demonstrations of these weapons.

17.     In October 2019, Mr. Wood created Woody's Weapons with the assistance of Mr. Tafoya. Mr. Tafoya and Mr. Wood acquired, either through demo letters or transactions with other FFLs, more than 100 NFA firearms.

18.     Over the ensuing years from roughly 2013 to the fall of 2021, Mr. Tafoya obtained from 300 to 400 Demo Letters from various law enforcement agencies in New Mexico.

19.     ATF approved nearly every single one of Mr. Tafoya's and Mr. Wood's applications for NFA weapons, including those using Demo Letters to acquire post-1986 firearms.

20.     Every time, Mr. Tafoya and Mr. Wood submitted the proper ATF paperwork.

21.     When ATF did not approve of a Demo Letter, the reason was typically for a simple, clerical error such as not noting the correct NFA firearm model or entering the wrong year. The handful of times where ATF did not initially approve of his application, Mr. Tafoya would contact ATF to clarify the issue, correct and then resubmit the corrected forms that ATF requested. In doing so, ATF approved of nearly 100% of the Mr. Tafoya's and Mr. Wood's applications for NFA weapons based on the Demo Letters submitted to the ATF.

22.     ATF would sometimes contact the head of the local law enforcement agency that Mr. Tafoya and Mr. Wood were working with to confirm the details of the Demo Letter. After speaking with the head of the law enforcement agency, ATF would then approve the application and authorize the transfer of the requested post-1986 machine guns to Mr. Tafoya and/or Mr. Wood.

23.     Typically, Mr. Tafoya conducted approximately three to four machine gun demonstrations a year. Some years were higher.  In 2021, for example, when he started working with large law enforcement agency, Mr. Tafoya conducted more than ten field demonstrations. For each demonstration, the law enforcement agency would schedule the firearm demonstration at its official firing range and Mr. Tafoya would bring the NFA firearms and ammunition to that location. Law enforcement officers who were present at the range would then be able to practice handling and shooting several types of NFA firearms in various scenarios under the controlled setting of an law enforcement firing range. Sometimes another law enforcement department other than the one that provided the Demo Letter would participate in the demonstration. Mr. Tafoya provided his time, the weapons and the ammunition used for each demonstration.

24.     While Mr. Wood was not able to attend every demonstration, he did attend several of the law enforcement demonstrations. Either Mr. Tafoya or Mr. Wood were present for demonstrations related to firearms obtained by Woody's Weapons.

25.     By 2018, Mr. Tafoya had acquired approximately 150 post-1986 firearms through ATF-approved Demo Letters acquisitions. Each of those firearms were registered with ATF's National Firearm Registration and Transfer Record ("NFRTR") and stored in an ATF-approved location.

26.     At one point, Mr. Tafoya considered renting out his collection of firearms for customers to practice shooting but decided that the potential liability was not worth the effort. So, in the summer of 2018, he decided not to renew his SOT certificate for his license, which, under ATF regulations, required him to liquidate all his post-1986 firearms to either government entities or other ATF-approved FFLs/SOTs. *See* 27 C.F.R. § 479.105(f) (making it unlawful to possess a post-1986 firearm without an SOT license).[5]

27.     By that time, Mr. Tafoya had met an individual from Houston, Texas, who agreed to broker his guns sales for a commission. After Mr. Tafoya sent ATF a notice of non-renewal of his SOT certificate, Mr. Tafoya then sold his inventory of NFA firearms to other FFLs/SOTs through "no letter"[6] sales. Mr. Tafoya's broker sold eighty-six of his NFA firearms. ATF approved of each of these no letter sales as well as all the other sales that his broker did not handle.

28.     In October 2018, Mr. Tafoya obtained a Type 7 FFL, manufacturer of firearms other than destructive devices. He also obtained a Type 10 FFL, manufacturer of destructive devices, for his business, JCT Manufacturing LLC. Mr. Tafoya also obtained a Class 3 SOT for himself and a Class 1 SOT for JCT Manufacturing LLC at the same time he obtained the FFLs from ATF.

---

[5] Under 18 U.S.C. § 922(o), it is unlawful to possess a post-1986 firearm without an SOT license, therefore any FFL/SOT who discontinues business "shall, prior to going out of business, transfer in compliance with the provisions of this part any machine gun manufactured or imported after May 19, 1986, to a Federal, State or local governmental entity," or a qualified FFL/SOT. 27 C.F.R. § 479.105(f).

[6] As explained above, an FFL/SOT can only acquire a post-1986 machine gun through either: (i) an ATF approved dealer-to-dealer sale, where one FFL/SOT sells a post-1986 machine gun to another FFL/SOT; or (ii) through the Demo Letter process. In former method, the FFL/SOT buyer does not need a Demo Letter from a government entity, hence these sales are referred to as "no letter" sales in the industry.

C.      *A 2018 ATF investigation concludes that*
        *Mr. Tafoya properly acquired his NFA firearms.*

29.     In late 2018, Mr. Tafoya became aware that ATF had opened an investigation into his Demo Letters.

30.     On October 30, 2018, ATF Industry Operations Investigator, Mark C. Doran, emailed the BCSD Sheriff, Manuel Gonzales, seeking to confirm that Sheriff Gonzales had provided Demo Letters to JCT Manufacturing. *See* Exhibit 1, Emails from Mark Doran to Manuel Gonzales ("Doran Emails"). Mr. Doran wrote:

> **Subject:** Machine Gun Transfers to FFL For Demonstration - Questions and Concerns
>
> Good afternoon Sheriff Gonzales. My name is Mark Doran and I a[m] investigator with the ATF currently working a detail with the National Firearms Act Division (NFAD). Sorry I missed you when I called earlier but your assistant was kind enough to provide me with your email address. Additionally, I would like to apologize in advance for the length of this email.
>
> . . .
>
> If you don't mind, I would like to confirm with you that you have provided law letters to JCT Manufacturing in Albuquerque, NM with the following law letters. Please note that all law letters dated 9-24-8 were individual letters. Typically a request on the same day would have all the machine guns listed on one request.
>
> . . .
>
> Sir, if you have not made any of these requests, please let me know so that we may take appropriate action. I would also ask that you keep our inquiry concerning the FFL confidential and need to know only. If you have made the requests and perhaps feel you were misinformed concerning the law letter, I will summarize federal law and regulation. If you feel you have inadvertently requested the machine guns we will simply disapprove pending transfers (I have one).
>
> - Transfers of restricted machine guns to FFLs on behalf of a government agency (includes SO's) must be done for the purposes of a sales sample. Meaning, the agency has a need for demonstration because and actual sale is dependent upon the demonstration.

10

- The transfer is restricted for use by federal, state, and local government entities. Meaning, a law letter cannot be provided to assist an FFL in increasing restricted machine gun inventory for personal use or resale.

- Transfer can only be considered for approval if it is established that a demonstration is required for the sale or potential sale to the government agency; if it is established that the machine gun(s) are available to fill subsequent orders; and the requesting government agency provides a law letter attesting to their need for the machine gun(s).

- The intent of the law letter is to ensure the machine gun transfer is being done only for purposes authorized under federal law. That is, for the sale or potential sale of the particular machine gun being requested for transfer.

- In short, the exemption to transfer restricted machine guns allow for a government agency to demonstrate a restricted firearm as a "sales sample". If the government agency has no intention of purchasing or considering the purchase of the machine gun(s), the law letter, by law, cannot be provided to the FFL.

Sir, sorry again for the long email. Please give me a call when you have a moment to discuss further. My cell phone is the best way to reach me and the number is 270-217-6974. I appreciate your understanding and patience as we strive to make sure machine guns are being placed into commerce legally. The pending transfer I have will be disapproved but I will not do so until we have a chance to speak or you have a chance to reply to my email. Thanks again sir for your time.

*See* Doran Email, attached here as Exhibit 1, pp. 1-2.

31.    On October 31, 2018, the very next day, Mr. Doran rejected an application to transfer a Herstal FN P90 machine gun and a silencer from a FFT/SOT dealer to Mr. Tafoya. *See* Exhibit 2, ATF Form 3 Denial (Dated Oct. 31, 2018) (listing serial numbers FN021121 and 01071).

32.    On November 1, 2018, Mr. Doran sent a follow-up email to Sheriff Gonzales:

Good morning sir. Just wanted to let you know that your law letter is now being used by an FFL in Florida. Sir, please talk to your team sooner rather than later if you don't mind. Also, if you have not signed law letters for a dealer in Florida please let me know. I have attached a copy of the letter for your viewing.

When speaking to your team sir please remind them that these are restricted possession machine guns and fraudulent use of the law letters to obtain the machine

11

guns is a federal offense under 18 U.S.C. 922(0). I hate to emphasize the seriousness of this in an email forum but I know you are busy and I don't want to tie you up on the phone.

In closing, based on our discussion yesterday, I would also recommend that you find out how many FFLs these letters have gone to and perhaps request that the letters be returned to you.

Thanks in advance for you cooperation sir.

*See* Doran Email, attached as Exhibit 1, p. 1.

33. In November 2018, Sheriff Gonzales spoke with local ATF agent, Kevin Wolfe, Undersheriff Rudy Mora, and others about ATF's inquiry into Mr. Tafoya's Demo Letters.

34. In April 2019, Sheriff Gonzales had a follow-up meeting at the Sheriff's office with Mr. Tafoya, Agent Wolfe, Mr. Mora, Undersheriff Larry Koren, BCSD SWAT Lieutenant Brandon Blackmon, and others concerning the ATF inquiry. *See* Exhibit 3, Meeting Request Re: ATF Inquiry (stating: "Meeting requested by ATF Agent Kevin Wolfe to discuss Law Letters (i.e. Demo letters) that have been authorized by the Sheriff for business entities of James Tafoya. This will be a continuation of a previous conversation brought to the Sheriff in November of last year regarding the same matter.").

35. At the meeting, Sheriff Gonzales confirmed to ATF that the Demo Letters between BCSD, Mr. Tafoya, and JCT Manufacturing were valid and authentic.

36. Agent Wolfe informed Sheriff Gonzales he could continue to work with Mr. Tafoya and JCT Firearms.

37. After the meeting, Mr. Tafoya spoke with ATF Agent Mr. Wolfe, who told Mr. Tafoya to contact him in the future if issues arose with his Demo Letters.

38. Soon after, ATF concluded their investigation and cleared Mr. Tafoya's use of Demo Letters.

39.     In 2019, after ATF concluded its investigation and cleared Mr. Tafoya, ATF resumed approving Mr. Tafoya's transfer applications based on Demo Letters. For instance, on April 11, 2019, ATF approved Mr. Tafoya's application to transfer of the same Herstal FN P90 machine gun and silencer that Mr. Doran had denied back in October 2019. *See* Exhibit 4, ATF Form 3 Approval (dated April 11, 2019) (listing same serial numbers FN021121 and 01071, which are the same as those listed in Mr. Doran's Form 3 denial). And on April 24, 2019, ATF approved Mr. Tafoya's application to transfer thirteen short-barreled rifles to BCSD's SWAT team. *See* Exhibit 5, Form 5 Approval (dated April 24, 2019).

**D.    *Mr. Tafoya's subsequent contact with ATF and Mr. Tafoya's and Mr. Wood's business dealings in 2018-2021.***

40.     In 2019, Mr. Tafoya acquired two Heckler and Koch MP5SD NFA machineguns from another FFL/SOT through an ATF-approved transfer. When the machine guns arrived, however, there were silencers attached to each machine gun. Because Mr. Tafoya did not purchase the silencers, he did not receive any ATF paperwork documenting their transfer or registration. Mr. Tafoya immediately contacted ATF and asked ATF to collect the unregistered silencers since he was not authorized to possess them. ATF Agent Rachel Alonzo thanked Mr. Tafoya for informing ATF about the silencers, but never collected them from his ATF-approved storage vault. *See* Exhibit 6, Text Messages between Mr. Tafoya and ATF Agent Rachel Alonzo at 1-2 (Tafoya stating on August 30, 2019 that he had "HK mp5sd mg S/N S98071 silencer S/N 001146" and "HK mp5sd mg S/N S98005 silencer S/N 001060"; ATF agent Alonzo responding "Thank you" then on September 17, 2019, ATF agent Alonzo stating: "I haven't forgotten about you with

13

regards to the silencers, but I'm making progress. As soon as I get info finalized I will let you know. Thnx.").

41. On June 1, 2020, JCT Firearms retail location was burglarized. The security system notified Mr. Tafoya around 2:15 a.m. that there was a break in at his store. Mr. Tafoya immediately called the Albuquerque Police Department ("APD") and ATF Special Agent Kevin Wolfe. Mr. Tafoya arrived at JCT Firearms store at approximately 2:30-2:45 a.m., and APD officers and Agent Wolfe arrived soon after. Then ATF Agent Alonzo arrived and around dawn four ATF Industry Operations Investigators ("IOIs") showed up. The burglars did not steal any NFA firearms, because Mr. Tafoya locks all NFA firearms in a secure vault at a separate location. The ATF IOIs conducted an inventory inspection of all the NFA firearms in the secured vault to ensure that all the ATF-approved machine guns were accounted for and properly registered. The ATF IOIs found the two unregistered silencers, but after talking with ATF Agent Alonzo, they left the silencers in Mr. Tafoya's ATF-approved secured vault. The ATF IOIs concluded that the NFA firearms were all accounted for and properly registered. *See* Exhibit 7, Tafoya's Weapons Inventory, National Firearm Registration and Transfer Record (dated June 1, 2020).

42. In 2019, Mr. Tafoya notified ATF that he would not renew the Type 7 FFL and the corresponding SOT held under JCT Manufacturing. At the time, Mr. Tafoya had acquired about 100 NFA firearms under those licenses. Of those 100 NFA firearms, he had acquired about forty through ATF-approved no letter sales from another FFL/SOT in Florida and about sixty through the ATF-approved Demo Letter process. After he notified ATF that he was liquidating his inventory of NFA weapons held under JCT Manufacturing licenses, he began selling the firearms to other FFLs/SOTs through ATF approved no-letter deals. Once again, Mr. Tafoya had his broker handle those sales.

14

43.     In 2021, Mr. Tafoya renewed his remaining FFLs and SOTs. In June 2021, he obtained a Type 7 FFL, manufacturer of firearms other than destructive devices, for JCT Firearms LLC. He planned not to renew the JCT Manufacturing Type 7 FFL and corresponding SOT.

44.     In July 2021, Mr. Tafoya established Integrity Firearms LLC with Shawn Blas, a former ATF investigator. Mr. Tafoya obtained a Type 1 FFL, dealer in firearms other than destructive devices, for Integrity Firearms. While Mr. Tafoya owns all of Integrity Firearms' inventory, he and Mr. Blas agreed to share the business profits equally. The business plan for Integrity Firearms LLC included acquiring NFA firearms for demonstration to various New Mexico law enforcement agencies. Mr. Blas would be responsible for interfacing with law enforcement agencies and demonstrating how to safely handle, load, and breakdown the demonstrated firearms, as well test fire those weapons. Mr. Blas's experience as a former law enforcement officer and ATF investigator made him the ideal person to perform that task.

45.     Starting in 2019, Mr. Tafoya began working with Tim Wood, who also had an FFL license and SOT certificate. Mr. Tafoya assisted Mr. Wood with acquiring Demo Letters and used his extensive contacts in the industry to locate and purchase no letter NFA firearms. In 2021, Mr. Wood's career plans shifted, and he decided not to renew his ATF licenses. Accordingly, Mr. Wood, under ATF's regulations, had to liquidate his NFA firearms inventory.[7]

---

[7]   While Mr. Wood had planned on not renewing his licenses, ATF's seizure of his weapons prohibited him from liquidating his inventory and closing his business. Accordingly, Mr. Wood has been forced to renew his FFL and SOT with the ATF until the issue of his lawful possession of these NFA weapons is resolved.

**E.**     ***The November 30, 2021 ATF Raid and Seizure.***

46.     In September 2021, Mr. Tafoya and Mr. Wood attempted to access ATF's online database and form processing service, eForms,[8] however, none of the weapons registered to Mr. Wood's license appeared on the eForm database. Mr. Tafoya assumed initially that it was a temporary software or database glitch. Mr. Blas reached out to the ATF NFA Branch to see whether it was a glitch. ATF informed him that the problem was not a glitch. Instead, Mr. Blas was instructed to contact ATF Agent Tim Moore. Agent Moore informed them that ATF was investigating an individual who had transferred NFA firearms to Mr. Tafoya, but that ATF would reinstate access to their firearms in two to three weeks. Mr. Tafoya told Agent Moore that he was happy to help ATF's investigation in any way and that Agent Moore could review any of Mr. Tafoya's documents.

47.     Mr. Tafoya and Mr. Wood did not hear anything from ATF for the next several months and their eForm accounts remained inoperable.

48.     On November 26, 2021, ATF obtained search warrants to search JCT Firearms retail store and the secured vault associated with Mr. Tafoya's and Mr. Wood's licenses as well as

---

[8] eForms lists each licensee's ATF registered firearms, making it easy for each licensee to create an appropriate ATF transfer form and select the relevant firearms to include in each form. ATF describes eForms as:

> ATF's eForms allows individuals and members of the firearms industry to file certain forms electronically rather than via paper applications. The electronic filing is designed to be more efficient and accurate and will allow ATF to process the submissions more efficiently. The forms that can be filed relate to the importation of firearms, ammunition and defense articles; transactions with National Firearms Act (NFA) firearms; and the Annual Firearms Manufacturing and Exportation Report (AFMER).

*eForms*, Bureau of Alcohol, Tobacco, Firearms and Explosives, available at https://www.atf.gov/firearms/applications-eforms.

the Integrity Firearms LLC's retail store.[9] The NFA firearms acquired by Woody's Weapons were also stored in JCT Firearm's warehouse.

49.    On November 30, 2021, at around 7:15 a.m., Agent Moore and about fifteen to twenty ATF agents in full SWAT gear showed up at Mr. Tafoya's home. Agent Moore called Mr. Tafoya to let him know that the ATF agents were outside of his home and were going to search it. Agent Moore agreed to hold off on the search so Mr. Tafoya's wife and kids could leave with the family dog. Once they departed, ATF agents entered the house and seized laptops, cell phones, and other items. The ATF agents examined some non-NFA firearms (a.k.a. GCA firearms), which do not have to be registered with ATF, but did not seize any of those GCA firearms.

50.    The ATF agents then went to JCT Firearms and Integrity Firearms while Mr. Tafoya remained at his home. In a sign of cooperation, Mr. Tafoya provided Agent Moore and the other ATF agents the combination codes to the secured vault and safes at those locations.

---

[9] Despite repeated requests by Petitioner Tafoya and Petitioner Wood, the United States has not disclosed the affidavits supporting the United States' request to search any of the locations at issue in this case. Upon information and belief, those affidavits violate the most basic tenants of Fourth Amendment jurisprudence as they most likely contained false or recklessly misleading statements and most certainly failed to describe, with particularity, the weapons to be seized. The warrants state that the law enforcement officers were to "examine all firearms to determine if each firearm is lawfully possessed, leaving the firearms legally possessed with the owner(s) thereof and seizing all illegal firearms and components." *See, e.g.,* (In the Matter of the Search of the Premises at 207 Old Coors Drive SW, Albuquerque, New Mexico 87121). As the United States Supreme Court and the Tenth Circuit have held, however, the Fourth Amendment does not "countenance open-ended warrants, to be completed while a search is being conducted and items seized or after the seizure has been carried out." *Lo Ji Sales, Inc. v. New York,* 442 U.S. 319, 325 (1979). *See also United States v. Janus Indus.*, 48F.3d 1548, 1553 (10th Cir. 1995) (holding that as "to what is to be taken, nothing is left to the discretion of the officer executing the warrant," quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)). Since all the warrants in this case expressly bestowed in-the-field-discretion to the affiant and his agents to determine what undescribed weapons were to be seized based on their subjective field determinations, the seizure of all the weapons in this case were patently unconstitutional.

51.     ATF seized 239 firearms. The seizure included no-letter NFA firearms; NFA firearms acquired through the Demo Letter process; and three non-NFA firearms (a.k.a. GCA firearms). Each of the NFA firearms seized had been duly registered with ATF and approved by ATF to be transferred to the vault where they were found. In addition, ATF seized the two unregistered silencers that Mr. Tafoya had reported to ATF long ago, but the ATF never collected.

52.     The ATF agents did not seize every firearm in the secured vault. The ATF agents left over a thousand firearms, including certain non-NFA firearms (a.k.a. GCA firearms). The agents did not seize certain NFA firearms including silencers, SBRs, SBSs, and machine guns. The ATF agents did not seize any firearms from the retail store itself, which stocked thousands of GCA firearms. All of the NFA firearms had been in the ATF-approved secured vault.

53.     To date, the United States has not indicted anyone associated with the seizure of these ATF-approved weapons.  The United States has informed Mr. Wood that he is not a target of their investigation, and that the United States did not intend to bring any criminal charges against Mr. Wood.

54.     On January 12, 14, and February 1, 2022, Mr. Tafoya and Mr. Wood each received notices of forfeiture. Mr. Tafoya and Mr. Wood responded to each one by timely asserting claims of lawful ownership, contesting any forfeiture, and documenting their legal right to own and possess the weapons.

55.     The United States has not filed any civil asset forfeiture complaint, returned Mr. Tafoya's or Mr. Wood's property, or filed a criminal complaint related to the seized property. *See* 18 U.S.C. § 983(a)(3)(A) (stating that no "later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules

18

for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint . . . .").

**F.      *The Detrimental Impact of ATF's Seizures and Investigation.***

56.     Since ATF's seizure of their lawfully possessed weapons, Mr. Tafoya's and Mr. Wood's businesses has been irreparably impacted under the Fifth Amendment of the United States Constitution (stating that "nor shall private property be taken for public use, without just compensation").

57.     Mr. Tafoya and Mr. Wood cannot transfer any of their NFA firearms to other license holders because ATF has seized them and frozen their SOT certificates.

58.     Mr. Tafoya and Mr. Wood were irreparably harmed as the ATF seized NFA firearms that other FFLs/SOTs had already bought and paid for and were waiting to be shipped.

59.     In addition, Mr. Tafoya has been irreparably injured as he no longer has a demo stockpile that he can use for law enforcement demonstrations. Under the circumstances, Integrity Firearm LLC's business plan is unable to be fully implemented.

60.     The loss of possession of their NFA firearms has irreparably hampered Integrity Firearm's relationship with local law enforcement.

61.     In addition, a large local law enforcement agency was planning to purchase several firearms after a demonstration of those weapons, but ATF's seizure has made that impossible.

62.     Mr. Tafoya and Mr. Wood has lost business due to ATF's conduct.

63.     Because ATF has seized the hard drives on some of Mr. Tafoya's computers, which contained important business materials unrelated to ATF's investigation, Mr. Tafoya has had unforeseen obstacles in his other business ventures. For instance, ATF seized hard drives containing job bids, banking information, and financial documents concerning Mr. Tafoya's

19

painting company. Without this information, he has had to recreate business materials instrument to the operation of his painting company.

64.     Due to ATF's investigation, Mr. Tafoya and his family have had difficulty with banking and have had to switch banks. For instance, one bank dropped Mr. Tafoya, his father, Integrity Firearms, and the painting business he and his father had run for years due to the ATF investigation. This has caused unnecessary hardships to Mr. Tafoya and his business endeavors.

## ARGUMENT

ATF's seizure of Petitioners' property is both unlawful and continues to cause Mr. Tafoya and Mr. Wood irreparable harm. The ATF seizures here were unlawful because Mr. Tafoya and Mr. Wood had acquired each seized NFA firearm with ATF's explicit approval. The seizures were also unlawful because the warrants were not sufficiently particularized as required under the Fourth Amendment. In addition, ATF seized business documents, including hard drives, unrelated to Mr. Tafoya's firearms business that should be returned. Mr. Tafoya and Mr. Wood have been "aggrieved by . . . the deprivation of property" because the ATF's seizures of their property has interfered with their businesses, including firearms sales and Mr. Tafoya's painting business. Fed. R. Cr. P. 41(g). Lastly, Mr. Tafoya and Mr. Wood have filed timely claims to contest the United States' seizure of their property, and, under the prevailing federal law, once the United States missed its deadline to file a civil action as it has here, the United States "shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." *See* 18 U.S.C. 983(a)(3)(B)(ii). Accordingly, Mr. Tafoya and Mr. Wood asks that the Court return the property that ATF unlawfully seized during its unconstitutional searches on November 30, 2021.

20

***I.***     ***Legal Standard for the return of Mr. Tafoya's property under Rule 41(g).***

Fed. R. Crim. P. Rule 41(g) provides:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

The Advisory Committee Notes to the 1989 Amendments explain that under Rule 41(g) "a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41, Advisory Committee Notes, 1989 Amendments. *See Matter of Search of Kitty's E.*, 905 F.2d 1367, 1375 (10th Cir. 1990) ("Rule 41(e) requires us to consider not only the lawfulness of the search and seizure, but also whether Kitty's is aggrieved by a deprivation of its property, despite the legality of the search."); *United States v. Comprehensive Drug Testing, Inc.,* 621 F.3d 1162, 1173 (9th Cir. 2010) (en banc) (observing that "Rule 41(g) is concerned with those whose property or privacy interests are impaired by the seizure" and noting that suppression of evidence "applies only to criminal defendants whereas the class of those aggrieved [under Rule 41(g)] can be, as this case illustrates, much broader"). "It is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner. Therefore, the district court has both the jurisdiction and duty to return such property." *U.S. v. Wright*, 610 F.2d 930, 934-35 (D.C. Cir. 1979).

"[A] preindictment Rule 41[(g)] motion is an exercise of equitable jurisdiction." [10] *Matter of Search of Kitty's E.*, 905 F.2d at 1370. "A district court should exercise its equitable power to

---

[10] "What was formerly Rule 41(e) is now Rule 41(g), with only stylistic changes." *United States v. Shigemura*, 664 F.3d 310, 311 n.1 (10th Cir. 2011) (internal quotation marks omitted).

grant relief only if the Rule 41(g) movant shows 'irreparable harm and an inadequate remedy at law.'" *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (quoting *United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006)). *Accord Search of Kitty's E.*, 905 F.2d at 1370. *See United States v. Bacon*, 900 F.3d 1234, 1237–38 (10th Cir. 2018) (noting that "'in the federal courts equity has always acted only when legal remedies were inadequate'" and concluding that a rule 41(g) motion was inappropriate where the federal government only had constructive possession over property that the state retained in actual, physical custody, and that state remedies existed for return or compensation of the property) (quoting *Beacon Theatres, Inc., v. Westover*, 359 U.S. 500, 509 (1959)).

"A movant must demonstrate that retention of the property by the government is unreasonable in order to prevail on a Rule 41[(g)] motion." *Matter of Search of Kitty's E.*, 905 F.2d at 1375. *See* Fed. R. Crim. P. 41, Advisory Committee Notes, 1989 Amendments (explaining that although Rule 41(g) does not set forth a standard "to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property," that the test "must be . . . reasonableness under all of the circumstances . . . when a person seeks to obtain the return of property") (citing *United States v. Place*, 462 U.S. 696, 701 (1983)). "If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." Fed. R. Crim. P. 41, Advisory Committee Notes, 1989 Amendments. As such, a court may impose reasonable limits on the return of property: "the government might be able to protect its legitimate law enforcement interests in the property despite its return—e.g., by copying

22

documents or by conditioning the return on government access to the property at a future time."

*Id.*

When the burden of proof is satisfied, a court should exercise its equitable power and grant relief for the return of property under Rule 41(g). A court "must receive evidence on any factual issue necessary to decide the motion." Fed. R. Crim. P. 41(g). The court is to apply a preponderance of the evidence standard in making the determination that property should be returned to its rightful owner. *Cf. United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## II.  *Mr. Tafoya and Mr. Wood lawfully owned the seized items given that ATF has approved every single acquisition or transfer of his firearms.*

Since October 2009, Mr. Tafoya has held several FFLs and SOT certificates, through which he has acquired hundreds of NFA firearms. Mr. Wood has similarly held an FFL and SOT certificate since October of 2019. Every acquisition or transfer of an NFA firearm requires ATF approval. *See* 18 U.S.C. § 922(o); 26 U.S.C. § 5852(d); 27 CFR § 479.105(c). Mr. Tafoya and Mr. Wood have acquired each of their firearms with ATF's official approval.[11] Mr. Tafoya and Mr. Wood have complied with ATF's regulations, the GCA, and the NFA.

When acquiring NFA firearms through the Demo Letter process, Petitioners worked closely with various law enforcement offices to ensure that their officers were able to safely demonstrate the various NFA firearms. In doing so, Mr. Tafoya and Mr. Wood ensured their requests for NFA firearms complied with all ATF regulations and federal laws. Indeed, the ATF has investigated the manner in which Mr. Tafoya has acquired his Demo Letters in the past, and

---

[11]  The only exception are the two silencers Mr. Tafoya inadvertently received in 2019 and which he promptly reported to ATF and subsequently held with ATF's approval. *See* Exhibit 6, Text Messages between Mr. Tafoya and ATF Agent Rachel Alonzo at 1-2 (acknowledging that Mr. Tafoya had possession of the two silencers, but allowing him to continue to store them at JCT Firearms). Mr. Tafoya is not seeking the return of those silencers.

ATF found no problems with his acquisition of NFA weapons. In instances where ATF did not initially approve of a Demo Letter application, the reason was typically for simple, clerical errors such as not noting the correct NFA firearm model or entering the wrong year. The handful of times where ATF did not initially approve of his application, Mr. Tafoya would contact ATF to clarify the problem, and then resubmit corrected paperwork. All told, ATF approved of nearly 100% of Mr. Tafoya's and Mr. Wood's Demo Letter applications. On occasion, ATF would contact the head of the local law enforcement agency Petitioners worked with to confirm the details of the Demo Letter. After speaking with those law enforcement agencies, ATF would approve of the applications to transfer NFA weapons to Petitiners' secured storage vault, which housed firearms acquired by Mr. Tafoya and Mr. Wood.

Through this process and Mr. Tafoya's and Mr. Wood's compliance with ATF's regulations, the GCA, and the NFA, every single NFA firearm that ATF seized is registered on ATF's National Firearm Registration and Transfer Record ("NFRTR"). As Mr. Tafoya and Mr. Wood possessed each of the seized NFA firearms with explicit ATF approval, the United States cannot show that they unlawfully possess them. As such, as a matter of equity, the Court should order the United States to return their seized property under Fed. R. Crim. P. 41(g). To be sure, Mr. Tafoya and Mr. Wood have always complied with ATF's regulatory process. Which means that both now and, in the future, ATF will always know precisely where each and every one of these NFA weapons is located in case the ATF desires to use the weapons as "evidence" in the future.

Critically, ATF has already investigated Mr. Tafoya's firearms practice and Demo Letter acquisitions, cleared him of any wrongdoing, and allowed him to continue acquiring NFA firearms. Accordingly, Mr. Tafoya's and Mr. Wood's firearms businesses are protected under the

doctrine of entrapment by estoppel. *See United States v. Hardridge*, 379 F.3d 1188, 1192 (10th Cir. 2004) ("A claim of entrapment by estoppel is at heart a due process challenge."). Under this doctrine, a person is protected from prosecution where "(1) that a government agent actively misled him about the state of the law defining the offense;" "(2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense"; "(3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense;" and "(4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *United States v. Cox*, 906 F.3d 1170, 1190–91 (10th Cir. 2018). In 2018, ATF Agent Doran investigated and cleared Mr. Tafoya's use of Demo Letters. ATF Agent Wolfe informed Mr. Tafoya to contact him in the future if issues with ATF arose. After ATF concluded its investigation and cleared Mr. Tafoya, ATF resumed approving Mr. Tafoya's transfer applications based on the Demo Letters he submitted. Accordingly, the United States cannot now claim that their business practice is unlawful, because Mr. Tafoya and Mr. Wood have relied on ATF's approval of each and every NFA acquisition they made as part of their businesses.

### III.    *Because the warrant's phrase "all illegal" items is overly broad, Mr. Tafoya and Mr. Wood are entitled to the return of their property.*

ATF's seizure of Mr. Tafoya's and Mr. Wood's property here is unconstitutional because it violates the Fourth Amendment and the Federal Rules of Criminal Procedure, which demand that a search and seizure must be conducted via a valid warrant. To be constitutional, a warrant must specify the location to be searched, and describe, with particularity, the property to be seized at that location. U.S. Const. amend. IV; Fed. R. Crim. P. 41. The constitutional standard prevents:

> general, exploratory rummaging and the seizure of one thing under a warrant describing another. . . . [N]othing is left to the discretion of the officer executing the search warrant. The particularity requirement also ensures that a

25

> search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrable probable cause.

*United States v. Janus Industries*, 48 F.3d 1548, 1553-1554 (10th Cir. 1995) (internal quotations omitted). "When investigators fail to limit themselves to the particulars in the warrant both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." *United States. v. Heldt*, 668 F.2d 1238, 1257 (D.C. Cir. 1981). *See also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (holding that by "limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of a wide-ranging exploratory searches the Framers intended to prohibit"). These limitations are exceedingly significant in the context of a document search. *Heldt,* 668 F.2d at 1260.

ATF's warrants approved the seizure of "[a]ny firearm as defined by 18 U.S.C. § 921(a)(3) or 26 U.S.C. § 5845(a). **The searching agents may examine all firearms to determine if each firearm is lawfully possessed, leaving the firearms legally possessed with the owner(s) thereof and *seizing all illegal firearms and components*** . . . ." (bold in the original; italics added here). This language is overly broad because the phrase "all illegal" items does not "particularly describ[e] . . . the . . . things to be seized." U.S. Const., Amdt. IV. This language in the warrants here plainly violated Fourth Amendment since the warrant delegated discretion to agents in the field to determine, on a case by case basis, what weapons to seize. *See Lo Ji Sales, Inc. v. New York,* 442 U.S. 319, 325 (1979); *United States v. Janus Indus*., 48F.3d 1548, 1553 (10th Cir. 1995) (holding that as "to what is to be taken, nothing is left to the discretion of the officer executing the warrant," quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965)). Delegating discretion in this manner violates the fundamental guarantee of the Fourth Amendment's prohibition against general

warrants designed to rummage through one's property looking for contraband that cannot be described in the first instance.

The Supreme Court of the United States has also held similar warrants to be clearly invalid under the Fourth Amendment. *See Groh v. Ramirez,* 540 U.S. 551, 557 (2004). In *Groh*, the Supreme Court considered, although through review of *Bivens* and § 1983 claims, whether a warrant obtained by the ATF to search a ranch for "any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launches, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices of launchers" was sufficiently particular to comply with the Fourth Amendment's mandate that a warrant state with particularity the property to be seized. *Id.*, at 554. While the affidavit and application for the warrant identified the property with particularity, the warrant itself "did not incorporate by reference the itemized list contained in the application." *Id.*, at 554-555. Despite the government's arguments that the search was reasonable regardless of the warrant's language, the Supreme Court determined that the warrant was invalid because it "did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items[, n]or did it make what fairly could be characterized as a mere technical mistake or typographic error." *Id.*, at 558. The Supreme Court held the *Groh* warrant violated the Fourth Amendment.

The warrants obtained by ATF here are in fact more deficient than the warrant addressed in *Groh*. In *Groh*, there was record evidence that the application and affidavit in support of the application for the search warrant identified each item to be seized with particularity. But the government has refused, to date, to disclose to either Petitioner the application or affidavit supporting the application for the warrants issued here. Moreover, the warrants obtained by the ATF in this matter do nothing more than authorize a fishing expedition to search *all firearms*

27

located at the subject properties to determine if any firearm was unlawfully possessed. In other words, while the ATF agents in *Groh* had at least some idea of what they were searching for and sought to seize, the agents here were granted unbridled authority to examine every firearm at the property to determine whether any firearm was unlawfully possessed. Hence, just like in *Groh*, the warrants obtained by ATF here are unconstitutional and the search was unreasonable because the agents "did not have in [their] possession a warrant particularly describing the things" to be seized. *Groh*, 540 U.S. at 563.

To make matters worse for the United States, the ATF has a registry of every single NFA firearm that Mr. Tafoya and Mr. Wood ever possessed, along with information describing the precise location where each weapon was stored. If ATF suspected that any one of those weapons was illegal, it could have referred to the National Firearm Registration and Transfer Record ("NFRTR") to describe, with particularity, what weapons were illegal down to the make, model, and serial number of each firearm. Knowing every NFA weapon that Mr. Tafoya and Mr. Wood possessed, where it came from, and what manufacturer originally made the weapon, ATF could have attached a list of weapons describing, with particularity, each gun that was to be seized using the warrants ATF served on November 30, 2021. The affiant could have attached such a list of weapons on Attachment B of each warrant, a document entitled "Particular Things to be Seized," along make, model and serial number for each weapon. Instead, the affiant chose to have the warrant grant unconstitutional discretion to the field agents to decide, at each search location, what to seize and what to leave. Such discretion violates the Fourth Amendment.

Further, ATF did not seize any NFA firearms that were not properly registered to Petitioners other than the two silencers that Mr. Tafoya had previously reported to the ATF as

28

items he should not have.[12] Instead, ATF seized over two hundred firearms at Mr. Tafoya's and Mr. Wood's businesses, apparently without cross-referencing their own databases. Without particularity as to which firearms and components were contraband, the warrants left "it entirely to the discretion of the officials conducting the search to decide what items were likely [illegal] and to accomplish their seizure. The Fourth Amendment does not permit such action." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325 (1979). And because the warrant failed to state with particularity which firearms and components were contraband, the ATF seized items that were all lawfully possessed. Under binding case law, all of the seized weapons must be returned. *See, e.g., United States v. Howard*, 973 F.3d 892, 894 (8th Cir. 2020) (explaining that seized property must be returned following the filing of a Rule 41(g) motion if the petitioner "is entitled to lawfully possess the seized property at issue"). Because the warrants here were not particularized, they are invalid, and the United States should be ordered to return Mr. Tafoya's and Mr. Wood's unconstitutionally seized property.

**IV.     The United States must return the business documents seized from Mr. Tafoya's home and Petitioners' businesses, because they are unrelated to ATF's investigation.**

Mr. Tafoya is legally entitled to possession of all materials seized from his home. ATF seized hard drives and other business documents from his home that have no connection to his firearms licenses. Neither the United States nor ATF can show that these hard drives and documents have material relevance to its investigation and must therefore these materials should be return to Mr. Tafoya. *See Wright,* 610 F.2d at 939 ("[W]hen property is seized from a person, the court must return it to that person when it is no longer needed by the government); Fed. R. Crim. P. 41, Advisory Committee Notes, 1989 Amendments (noting that "if the United States'

---

[12] *See* footnote 11 (describing the inadvertent acquisition of the two silencers and Mr. Tafoya's communication with ATF concerning them).

legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable"). Although a search warrant for documents described by their content may involve a cursory examination of unrelated papers—to determine whether they are among those authorized to be seized—the right to a cursory examination does not authorize the seizure of documents when they fall outside the scope items particularly described to be seized by the warrant. *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976). As *Andresen* noted:

> In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the "seizure" of telephone conversations. In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.

*Id.* Any documents seized in excess of the boundaries of the warrant should be returned. *In re Search Warrant Dated July 4, 1977*, 572 F.2d 321, 327 (D.C. Cir. 1977). The seized documents belonging to Mr. Tafoya were clearly unrelated to the warrant, thus their seizure was unreasonable. Only materials related to the illegal importation of firearms under 18 U.S.C. § 922(l) were subject to seizure. As discussed throughout this pleading, Mr. Tafoya had ATF approve every transfer of each NFA weapon he possessed.

In the alternative, ATF could easily make copies of all hard drives and documents seized and return the originals to Mr. Tafoya. Under the case law, the Court can impose reasonable limits on the return of property: "the government might be able to protect its legitimate law enforcement interests in the property despite its return—e.g., by copying documents or by conditioning the return on government access to the property at a future time." *Id.* That can be reasonably accomplished here.

30

***V.       The seizure has caused and continues to cause Mr. Tafoya and Mr. Wood irreparable
         harm, with no adequate remedy at law to secure their return.***

Mr. Tafoya and Mr. Wood faces irreparable harm from the loss of their seized property
because Mr. Tafoya and Mr. Wood cannot transfer any of their NFA firearms without an operative
SOT certificate. In addition, the ATF seized NFA firearms that other FFLs/SOTs had already
bought and paid for and were waiting to be shipped. Due to the seizure, Mr. Tafoya no longer has
a demo inventory that he can use for law enforcement demonstrations. Integrity Firearm's is
therefore unable to fully function, because its business model was based in part on NFA
demonstrations for law enforcement agencies. Further, a local law enforcement agency was
planning to purchase several firearms after a demonstration in June and July 2021, but ATF's
seizure and investigation has temporarily halted this sale.

In addition, Mr. Tafoya has had difficulty with his other business ventures, because ATF
has seized the hard drives from Mr. Tafoya's business computers, which contained important
business documents unrelated to the ATF's investigation. For instance, the seized hard drives
contain bids, banking information, financial documents for Mr. Tafoya's painting company.
Without this information, Mr. Tafoya has had to recreate some materials and needs others to
complete ongoing work. The case has caused irreparable injury to Mr. Tafoya's banking, as his
family's longstanding banking partner fired them as clients over the ATF's investigation. This
bank dropped Mr. Tafoya, his father, Integrity Firearms, and the painting business he and his father
run due to this investigation. Because he was forced to switch banks, Mr. Tafoya has run into
issues obtaining inventory for his business due to the transition between banks.

An ongoing business need constitutes irreparable harm sufficient to justify the return of his
property. As noted in *Comprehensive Drug Testing*, protecting the integrity of business records
and the privacy of those individuals whose records are acquired by law enforcement officials

31

constitutes irreparable injury. 21 F.3d at 1174 (stating that "by forcing the government to return property that it had not properly seized, CDT is preserving the integrity of its business and the Players Association is protecting the privacy and economic well-being of its members, which could easily be impaired if the government were to release the test results swept up in the dragnet"). *Comprehensive Drug Testing* also observed that Rule 41(g) "does indeed contemplate that district judges may order the return of the originals, as well as any copies, of seized evidence: 'In some circumstances, however, equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized.'" *Id.* (citing Fed. R. Crim. P. 41 advisory committee notes (1989 amendments)).

## VI. *Mr. Tafoya and Mr. Wood have complied with the administrative process for civil asset forfeiture and the United States must return the property because it has missed the deadline to respond.*

Mr. Tafoya and Mr. Wood each received three notices of administrative forfeiture from the ATF. Mr. Tafoya and Mr. Wood timely responded to each notice, contesting the United States administrative forfeiture and documenting their legal interest in the firearms. Mr. Tafoya and Mr. Wood were each forced to tender two $5,000 bonds in order to assert their claims for a bond total of $20,000.  Under 18 U.S.C. § 983(a)(3)(A), the United States had 90 days from the date Mr. Tafoya and Mr. Wood filed their claims (filed on February 1, 2022 and February 17, 2022) to file a civil action or return Petitioners' property.  The United States has done neither. At this juncture, the Court should enforce 18 U.S.C. § 983(a)(3)(A)&(B) by ordering the return of Mr. Tafoya's and Mr. Wood's seized property and the return of their bond funds.

Each of ATF's Notice of Forfeiture states:

**TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM**. If you do not file a claim, you will waive your right to contest the forfeiture of the asset. Additionally,

if no other claims are filed, you may not be able to contest the forfeiture of this asset in any other proceeding, criminal or civil.

A. . . .

B. **Time Limits**: A claim must be filed within 20 days of the date of this letter; therefore, you must file your claim by February 01, 2022. *See* 19 U.S.C. § 1608. A claim is deemed filed on the date received by the agency at the address listed above.

C. . . .

D. . . .

E. **Claim Forms**: A claim need not be made in any particular form, but a claim form is available at www.forfeiture.gov, which you may print and deliver to the agency pursuant to the instructions above. *See* 18 U.S.C. § 983(a)(2)(D).

F. . . .

G. . . .

H. **When You File a Claim**: A timely claim stops the administrative forfeiture proceeding. The seizing agency forwards the timely claim to the U.S. Attorney's Office for further proceedings. You may also file a petition for remission or mitigation.

I. . . .

Exhibit 8, Civil Asset Forfeiture Claim Notice.

Section 983(a)(2) sets forth the requirements for filing a claim and § 983(a)(3) provides that within "90 days after a claim has been filed," the United States "*shall* file a complaint for forfeiture . . . or return the property pending the filing of a complaint . . ." 18 U.S.C. § 983(a)(3) (emphasis added). If, within 90 days of when the complaint is filed, the United States does not: (i) return the property; (ii) file a complaint for forfeiture; or (iii) obtain a criminal indictment; "the Government *shall* promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B) (emphasis added).

33

Here, more than 90 days have passed since Mr. Tafoya and Mr. Wood filed their claims contesting the civil asset forfeiture. The United States has not filed a complaint for forfeiture or obtained a criminal indictment within that time, and therefore the United States must return their seized property.

**PRAYER FOR RELIEF**

WHEREFORE, for the reasons discussed above, Mr. Tafoya and Mr. Wood request, under Rule 41(g) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 983, that the Court order the United States to return of all the seized property that ATF agents took on November 30, 2022 and return their bond funds. Mr. Tafoya and Mr. Wood are not opposed to allowing the United States fair access to those materials as needed should the Court order their property returned to them. In addition, Mr. Tafoya and Mr. Wood request attorney fees and costs under the Equal Access to Justice Act, *see* 5 U.S.C. § 504 and 28 U.S.C. § 2412, and any other relief the Court deems just and proper.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP

MARC M. LOWRY
CAREY C. BHALLA
WOUTER ZWART
500 4th Street, N.W., Suite 400
Albuquerque, NM 87102
(505) 243-1443
mlowry@rothsteinlaw.com
cbhalla@rothsteinlaw.com
wzwart@rothsteinlaw.com

*Attorneys for Petitioner James Tafoya*

-and-

34

Nicholas T. Hart
Carter B. Harrison IV
**HARRISON, HART & DAVIS, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com
carter@harrisonhartlaw.com

*Attorneys for Petitioner Timothy Wood*