# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES TAFOYA and
TIMOTHY WOOD,

      *Petitioners*,

v.                                           No. 1:22-cv-00517-WJ-LF

UNITED STATES OF AMERICA,

      *Respondent*.


**PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE
WHY CASE SHOULD NOT BE TRANSFERRED**

*A person aggrieved by an unlawful search and seizure or by
the deprivation of property may move for the property's return.*
***The motion must be filed in the district where the property was seized.***

*Fed. R. Crim. P. 41(g)*

Petitioner Timothy Wood, by and through his attorneys, Nicholas T. Hart and Carter B. Harrison IV of Harrison, Hart & Davis, LLC, and Petitioner James Tafoya, by and through his attorneys, Marc M. Lowry and Carey C. Bhalla, of Rothstein Donatelli, LLP, file this response to the Court's Order to Show Cause Why Case Should Not Be Transferred.  Dkt. 16.  As outlined below, under binding United States Supreme Court law, Fourth Circuit law and Tenth Circuit law, the District of New Mexico is the proper venue to hear this matter and Rule 41(g) is the appropriate mechanism for bringing this action.

THE ORDER TO SHOW CAUSE IS BASED ON A FLAWED PREMISE

The Court's order first asserts that venue should be transferred because "the United States anticipates that indictments will be handed down in the District of Maryland against Petitioners." Dkt. 16, p. 2. The United States, however, has not claimed that indictments will be handed down; the United States has only asserted that, "[a]lthough charges have not yet been filed against the Petitioners, an indictment addressing all the NFA weapons seized and naming one or both of the Petitioners as defendants *is expected* to be sought once the investigation is concluded. Dkt. 6, p. 4 (emphasis added). The behavior of the United States contradicts the Court's characterization of this case.[1]

The firearms at issue in this petition were seized on November 30, 2021. The United States also seized records that same day from multiple business locations and Mr. Tafoya's home, including laptop computers. The United States has asserted to both Petitioners that they have obtained and reviewed communications with or about Mr. Tafoya and Mr. Wood from other individuals targeted by the investigation. Yet the United States has taken no step towards charging Mr. Tafoya or Mr. Wood with any crime in the more than one year since these seizures occurred.

The United States has also alerted Mr. Wood that he is not a target of this investigation. The United States referred to Mr. Wood as the nominal owner and operator of the business that owned the firearms in its Response to the petition. Christina Hoffman, one of the prosecuting attorneys for this case out of Baltimore, Maryland, emailed Mr. Wood's counsel and stated that "based on what we know now, we view [Mr. Wood] as a witness." *See* Ex. 1. That same email stated that this belief "is exceedingly unlikely to change." *Id*. The ATF agents that carried out the seizure of the firearms informed Mr. Wood's counsel that they did not believe Mr. Wood to have

---

[1] Petitioners have no idea where their property is currently being stored.

engaged in any criminal activity, going so far as to say that they did not initially believe that Mr. Wood was alive or a real person because this investigation had little connection to him. On October 25, 2022, several individuals targeted by the investigation received emails from Michael Cunningham, another one of the prosecuting attorneys out of Baltimore, alerting them that they remained targets of the investigation. Mr. Wood did not receive such an email.

In addition, under the United States' theory of the case, the weapons at issue are not admissible evidence in any potential criminal case. The United States' claims the crime at hand is the use of "bogus" law letters to obtain weapons. Dkt. 6, p. 2. The weapons themselves have no probative value in establishing whether the law letters used to acquire the weapons were "bogus." While the United States claims that these weapons were "never intended to make it into the hands of law enforcement," Dkt. 6, p. 2, the United States cannot cite to any law, regulation or policy that prohibits (much less placed Petitioners on notice) that law enforcement could not possess or demonstrate these weapons to law enforcement agencies. That claim is, unfortunately, false.[2] Nor

---

[2] The United States, after all, is not above reproach or mistake. As The Honorable James A. Parker once stated to then-defendant Dr. Wen Ho Lee:

> I tell you with great sadness that I feel I was led astray last December by the executive branch of our government through its Department of Justice, by its Federal Bureau of Investigation and by its United States attorney for the district of New Mexico, who held the office at that time. . . .

> Although, as I indicated, I have no authority to speak on behalf of the executive branch, the president, the vice president, the attorney general, or the secretary of the Department of Energy, as a member of the third branch of the United States Government, the judiciary, the United States courts, I sincerely apologize to you, Dr. Lee for the unfair manner you were held in custody by the executive branch.

Statement by Judge in Los Alamos Case, With Apology for Abuse of Power, NY TIMES (Sept. 14, 2000), available at https://www.nytimes.com/2000/09/14/us/statement-by-judge-in-los-alamos-case-with-apology-for-abuse-of-power.html (last accessed December 8, 2022).

has the United States explained how possession of these firearms is unlawful when the transfer of them to Mr. Tafoya and Mr. Wood was reviewed and approved by the ATF.

The conduct of this investigation cannot be characterized as leading towards criminal charges against either Mr. Tafoya or Mr. Wood.  It has been more than one year since the firearms, records, and electronic devices were seized with no action on the part of the Government other than a self-serving email, sent only after Mr. Tafoya and Mr. Wood filed this Petition, stating that the investigation was ongoing.  Any assertion that this case should be transferred because of potential indictments must be rejected by the Court.

THE PROPER VENUE FOR THIS CASE IS NEW MEXICO

The Rules of Criminal Procedure state that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return," and that such a motion "*must* be filed in the district where the property was seized." Fed. R. Crim. P. 41(g) (emphasis added).  The Fourth Circuit has applied this rule based upon its plain language, characterizing Rule 41(g) as having a "district-of-seizure venue provision." *United States v. Garcia*, 65 F.3d 17, 21 (4th Cir. 1995). *See also United States v. Ebert*, 39 Fed. Appx. 889, 892 (4th Cir. 2002) (unpublished) (explaining that, under *Garcia*, "a motion for the return of property may *always be made* in the district where the property was seized, but added that venue for such a motion *is also proper* in the district of trial during a 'pending criminal proceeding.'") (citing *Garcia*, 65 F.3d at 20 (emphasis added).  While *Garcia* was a post-conviction case, *Ebert* expanded *Garcia's* holding, noting that the only time Rule 41(g)'s district-of-seizure venue rule could be avoided was when the district court hearing the case had an actual criminal case pending.  Then, *and only then*, could a court invoke jurisdiction under Fed. R. Crim. P. 41(h) addressing motions "to suppress evidence in the court where the trial will occur." *Ebert* reaffirmed the district-of-

4

seizure venue rule, observing "the *Garcia* court reasoned that under Rule 41[g], venue is proper in the district of trial only during a 'pending criminal proceeding' because 'that is the only possible forum for a Rule 12 motion to suppress.'" 39 Fed. Appx at 893 (quoting *Garcia*, 65 F.3d at 20).[3] As there is no pending criminal case here, and no attempt to suppress evidence has been forwarded by Petitioners, under binding Fourth Circuit law, Petitioners' Rule 41(g) case is "proper *only* in the district of seizure." *Ebert*, 39 Fed. Appx at 893 (emphasis added).

The District of Maryland has uniformly applied this holding to require that Rule 41(g) motions be filed in the district where the property was seized. For example, the District of Maryland has dismissed a Rule 41(g) motion for the return of property because "the Fourth Circuit has held that a defendant may file a motion for property seized in connection with a criminal investigation in the district of the trial *only if the criminal proceedings is pending*." *Cauthen v. United States*, 2017 WL 445239, at *1 (D. Md. Feb. 2, 2017). The District of Maryland has even dismissed a Rule 41(g) motion seeking return of property seized in Oregon because Rule 41(g) required that such a "motion must be adjudicated in Oregon." *Wiebe v. Nat'l Security Agency*, 2012 WL 1670046, at *1 (D. Md. May 11, 2012). The pending-criminal-proceeding rule requires that an active criminal case be filed; an appeal taken from the District of Maryland from a concluded criminal proceeding is not even enough. *See Kujundzic v. United States,* 2015 WL 5052744, at *2 (D. Md. Aug. 24, 2015) ("Rule 41(e) motions can only be made in the district of trial while criminal proceedings are pending in that court. Kujundzic filed his Motion . . . some three months after his appeal of his conviction had been docketed . . . . The Fourth Circuit

---

[3]  The Petitioners have been adamant that this is a motion for the return of their property; this is not a motion to suppress evidence in any potential criminal case.

subsequently affirmed . . . . Accordingly, Kujundzic did not have a pending criminal proceeding in this Court when he filed the Motion and does not have one today.").

The Tenth Circuit also interprets Rule 41(g) as having a district-of-seizure venue provision. *See Clymore v. United States*, 164 F.3d 569, 574-575 (10th Cir. 1999) ("We agree with the Fourth Circuit and hold that, at least in cases where the underlying criminal proceedings have concluded and the trial court can no longer exercise any control over the subject property, the proper venue for a Rule 41(e) motion is the *district in which the property was seized*.") (emphasis added); *United States v. Morales-Ramirez*, 502 Fed. Appx. 784, 786-787 (10th Cir. 2012) (unpublished) ("We cannot say that the district court's denial of Morales-Ramirez's Rule 41(g) motion based on a lack of jurisdiction was plain error. The rule plainly states that such motions must be filed in the district where the property was seized."). As does the District of New Mexico. *See, e.g., United States v. Morales-Ramirez*, 2011 WL 13174482, at 1 (D.N.M. May 13, 2011) (holding that a Rule 41(g) motion should be denied "[b]ecause the property at issue was seized in the district of California, not New Mexico"); *United States v. Daprano*, 2009 WL 5171854, at *1 ("Because the property at issue was not seized in the district of New Mexico, however, the Court does not have jurisdiction to order the State of New York to return the property."). The same is true for other districts within the Tenth Circuit. *See, e.g., United States v. Toombs*, 2022 WL 3681982, at *2 (D. Kan. Aug. 25, 2022 ("Because the currency was seized in Missouri, the District of Kansas is not the proper district for Toomb's motion, and his Rule 41(g) motion can be denied on that basis."); *United States v. Lopez*, 2012 WL 3001569, at *2 (D. Utah July 23, 2012) (granting a Rule 41(g) motion, after noting that "[s]uch a motion must be filed in the district were the property was seized," in part because "it is undisputed that the property in question was seized in this district").

Even though other circuits have ruled differently, those cases are easily distinguishable from this case. For example, the Eight Circuit has held that a Rule 41(g) motion had to be heard in the district where a trial occurred, and not where the property was seized, because the trial court held ancillary jurisdiction over the Rule 41(g) motion. *Thompson v. Covington*, 47 F.3d 974, 975 (8th Cir. 1995). Quite unlike *Thompson*, in this case no trial has occurred in another district; there are not even pending charges in this case. The Second Circuit has similarly ruled that a Rule 41(g) motion may be brought in the district where a trial occurred, even after the conclusion of criminal proceedings, but did so only in a case where a trial had already been held. *United States v. Giovanelli*, 998 F.2d 116, 118-119 (2d Cir. 1993) ("[W]e agree with the District Court that it had jurisdiction to hear the Rule 41(e) motion for return of property despite its being brought *after the conclusion of criminal proceedings* in a different district than that in which the property was seized.") (emphasis added). No court, however, has ever held that a Rule 41(g) petition for the return of unlawfully seized property cannot be filed in the district where the seizure occurred when no criminal proceedings in another district have ever been filed. The United States cannot cite to any case for this unfounded proposition.

This result is in keeping with the forfeiture laws that apply to individuals seeking to have their illegally seized property returned to them. For instance, the forfeiture law that applies to this case states that after Petitioners have posted a claim and a bond for the return of their property – which they have done – the case is to be transferred "to the United States attorney for the district in which the seizure was made, who shall proceed to a condemnation of the merchandise or other property in a manner prescribed by law." 19 U.S.C. § 1608. The appropriate venue for Petitioners' Rule 41(g) case is right here in the District of New Mexico where the United States seized Petitioners' property.

7

THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THIS CASE
AND SHOULD ORDER THE RETURN OF PETITIONERS' PROPERTY

*A person aggrieved by an unlawful search and seizure or by*
*the deprivation of property may move for the property's return.*
*The motion must be filed in the district where the property was seized.*
**The Court must receive evidence on any factual issue necessary to decide the motion.**

*Fed. R. Crim. P. 41(g)*

The Court, in its Order to Show Cause Why Case Should Not Be Transferred, directed Petitioners and the United States to address the issue of the Court's subject matter jurisdiction. Dkt. 16, p. 2. As Petitioners have extensively briefed in their Reply to the United States' Response,[4] the United States Supreme Court has conclusively held that the Court has subject matter jurisdiction over Petitioners' property rights to the seized weapons even though a criminal case may be under consideration by the United States. As framed by the United States Supreme Court, the fact that the United States is contemplating a criminal case or has a criminal case pending does not deprive the Court of subject matter jurisdiction because "a claimant whose property has been seized, however, has been entirely deprived the use of the property." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983). This is especially true when the property at issue is protected, as it is here, by the Second Amendment to the United States Constitution. U.S. Const. amend. II (stating "the right of the people to keep and bear Arms shall not be infringed"). In this case, the United States has infringed on Petitioners constitutionally protected property rights and their Second Amendment right to keep and bear arms, making the need to "petition the Government for a redress of grievances" via this litigation under the First Amendment more pressing than ever. *Cal. Motor*

---

[4]  Petitioners adopt by reference the arguments made in the Reply brief (Dkt. 13) addressing this Court's subject matter jurisdiction over this case.

*Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding that the First Amendment's right to petition the Government includes the Courts, stating that the "right of access to the courts is indeed but one aspect of the right of petition").

Under *Eight Thousand Eight Hundred & Fifty Dollars,* this Court must engage in the balancing test articulated under *Baker v. Wingo*, 407 U.S. 514 (1972), to determine if Petitioners' "Fifth Amendment right against deprivation of property without due process of law" has been violated. 461 U.S. at 564. Such an inquiry is, by necessity, performed "on an *ad hoc* basis" to determine "whether the flexible requirements of due process have been met." *Id*.

Of course, when resolving an active dispute over seized property the "overarching factor is the length of the delay." 461 U.S. at 565. "[S]hort delays – of perhaps a month or so – need less justification than longer delays." Delays like the one in this case, which is over a year, are quite significant. Being deprived of one's Second Amendment right to possess firearms that were lawfully obtained with the ATF's approval poses a significant prejudice to Petitioners' property rights. The Tenth Circuit has held that a delay of one year and two months between the seizure and the United States' filing a civil judicial forfeiture action presented an unconstitutional delay that violated due process and required the return of claimant's property. *Sarkisian v. United States*, 472 F.2d 468, 472 (10th Cir. 1973) (noting that forfeiture proceedings need to be conducted with meaningful dispatch to "sustain them against an attack directed to their constitutionality"). The length of the delay here favors Petitioners' claim.

The reason for the United States' delay in bringing forfeiture proceedings is also one of the considerations the Court may weigh. "[T] pendency of criminal proceedings is *only an element to be considered* in determining whether the delay is unreasonable. . . . [T]he pendency of a trial does not automatically toll the time for instituting a forfeiture proceeding." *Eight Thousand Eight*

9

*Hundred & Fifty Dollars*, 461 U.S. at 567 (emphasis added).  Here, there is no pending criminal case.  To the extent the United States has claimed that this is a "multi-year, multi-jurisdiction investigation," as the Court noted, Dkt. 16, p. 1, under Rule 41(g) the Court "must receive evidence on any factual issue necessary to decide the motion because" Petitioners dispute that there is any justification to delay restoration of their Constitutional rights to possess the seized property.  This dispute is not hypothetical. One of the Petitioners has been alerted that they are not a target of the investigation and only considered to be a witness. The other Petitioner has only been told that he is a "target," of the investigation, with seemingly no progress made towards completing the investigation in the past year.

Petitioners seek to reclaim property that was illegally seized and is being illegally possessed by the United States.  The United States must do more than make simple statements in pleadings to defeat Petitioners' case. The "court must receive evidence on any factual issue necessary to decide the motion."  Rule 41(g).  The Court cannot rely on bald claims in the United States' pleadings to resolve this motion.  *See, e.g., United States v. Channon*, 2020 WL 3051561, at *1 (D.N.M. June 8, 2020) ("[T]he Court disregards Mr. Channon's unsupported assertions."); DNMLR-Civ. 7.3(a) ("Parties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact.").  An evidentiary hearing must be held on the *Barker* factors at a minimum before resolving the issue of the Court's equitable jurisdiction.[5]

Resolving this property dispute requires an evidentiary assessment of whether the United States' investigation was "pursued with diligence."  *Eight Thousand Eight Hundred & Fifty*

---

[5] The Tenth Circuit has noted that a Rule 41(g) motion can only be dismissed after an evidentiary hearing addressing the equitable nature of the constitutional due process claim. *Floyd v. United States*, 860 F.2d 999, 1004 (10th Cir. 1988).

*Dollars*, 461 U.S. at 568.  This investigation has not been pursued with diligence.  ATF agents came to New Mexico in March of this year and conducted multiple, detailed interviews of law enforcement officials and officers in relation to this case.  Petitioners believe that supervising officials at the ATF called off this investigation after the initial rounds of interviews failed to produce any incriminating information.  In addition, ATF's investigation, by necessity, demands that sworn law enforcement officers, like elected Sheriffs and others who signed what the United States insists are "bogus" law letters, had to have been engaged in an illegal conspiracy with Petitioners for the United States' claims to have any merit.  That unfair and unfounded insinuation hampered New Mexico ATF's ability to work with local law enforcement agencies in New Mexico to investigate and prosecute criminal cases.  Rather than diligently pursue its investigation into Petitioners, the United States chose instead to mend political fences.  If the United States intends on litigating this Rule 41(g) case, Petitioners request leave of the Court to conduct discovery directed to defeat the United States' claim that they have been diligent in pursuing its forfeiture case.[6]  If the United States knows that the law letters used to obtain the weapons in question are indeed "bogus," as they claim, there is no rational reason to delay an indictment.  But, under *Eight Thousand Eight Hundred & Fifty Dollars,* even bringing an indictment now cannot defeat or forestall the Court's consideration of this case.  The Court must assess whether the delay in addressing Petitioners' claims to the subject property is constitutionally reasonable under the due process clause and existing case law.

---

[6]  Petitioners assert that the appropriate measure of investigatory diligence under the Constitutional analysis is the time it would take for the appropriate customs officers to determine that forfeiture of the seized property is appropriate under 19 U.S.C. § 1608.  Frankly, the timeframe to construct a *criminal* case under this analysis is entirely secondary, since "the pendency of a trial does not automatically toll the time for instituting a forfeiture proceeding." *Eight Thousand Eight Hundred & Fifty* Dollars, 461 U.S. at 567.

As noted in Petitioners' earlier briefing, the Supreme Court has rejected the United States' argument that the "initiation of Administrative Forfeiture Proceedings" prevents the filing of this action. Dkt. 6, p. 4. The Supreme Court dispensed with the claim "that a pending administrative petition should completely toll the requirement of a judicial proceeding," noting that an unreasonable delay "cannot justify prolonged seizure of his property without a judicial hearing." 461 U.S. at 566-567.

The third factor under *Barker* is whether Petitioners asserted their right to a judicial hearing. Petitioners did so in January and February of this year as the United States concedes. Dkt. 6, p. 3. The Supreme Court also observed that if a claimant wants an early resolution of this property dispute and "the claimant believes the initial seizure was improper, he could file a motion under Fed. R. Crim. P. 41(e) for a return of the seized property." 461 U.S. at 569. Petitioners sincerely believe their property was illegally seized and that is why they filed this case. This action is not improper. It has been undertaken with due diligence and with the understanding that federal law, including United States Supreme Court precedent, Congressional enactments, and the rules of this court all support Petitioners' case.

Finally, Petitioners have been prejudiced by the United States stripping them of their property. Petitioners cannot enjoy the use of their weapons. And because the United States has failed to bring a case of any kind against Petitioners, Petitioners have not had the opportunity to address the prejudice they suffered from the illegal warrant and affidavit used to seize their property. Given the failure of the warrant to particularly describe the items to be seized, and the unbridled discretion the warrant granted to law enforcement officers conducting the seizure to seize Petitioners' property, the warrant used in this case was on its face invalid and no reasonable

12

officer would have been entitled to rely on it or enjoy "good-faith" exceptions to the warrant requirement.  *See*, *e.g.*, *United States v. Leon*, 468 U.S. 897 (1984).

CONCLUSION

For the reasons addressed above, as well as in the Petitioners' Reply brief (Dkt. 13), Petitioners assert that the proper venue for this case lies in the District of New Mexico as this is the only District that complies with Fed. R. Crim. P. 41(g)'s district-of-seizure venue provision. Additionally, under *Eight Thousand Eight Hundred & Fifty Dollars* and *Floyd*, this Court must conduct an evidentiary hearing on the merits of Petitioners' constitutional due process claim before the Court makes any decision about declining to exercise jurisdiction to order the return of Petitioners' property.

Respectfully submitted,

**ROTHSTEIN DONATELLI LLP**

*/s/ Marc M. Lowry*
MARC M. LOWRY
CAREY C. BHALLA
500 4th Street, N.W., Suite 400
Albuquerque, NM 87102
(505) 243-1443
mlowry@rothsteinlaw.com
cbhalla@rothsteinlaw.com

*Attorneys for Petitioner James Tafoya*

-and-

Nicholas T. Hart
Carter B. Harrison IV
**HARRISON, HART & DAVIS, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
nick@harrisonhartlaw.com
carter@harrisonhartlaw.com

*Attorneys for Petitioner Timothy Wood*

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of December, 2022, I caused the foregoing pleading to be filed with the Clerk of the Court through the CM/ECF system that will serve all parties entitled to service and notice, as more fully reflected in the Notice of Electronic Filing.

*/s/ Marc M. Lowry*
**ROTHSTEIN DONATELLI LLP**

14